Steven Riess, SBN 100131
Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
(415) 989-1970
stevenriess@stevenriess.com

Attorney for Morris

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Julie Ann Morris, | Case No. C 06-01224 SC |
| Plaintiff, | **STIPULATION FOR FILING OF FIRST AMENDED COMPLAINT; ~~PROPOSED~~ ORDER** |
| vs. | |
| ChoicePoint Services, Inc., EquiSearch Services, Inc., | |
| Defendants. | |
| | COMPLAINT FILED: January 18, 2006 |

It is hereby stipulated by and between the parties, through their respective attorneys of record, that plaintiff may file a First Amended Complaint, a copy of which is attached. It is further stipulated that defendants ChoicePoint Services, Inc. and EquiSearch Services, Inc. waive notice and service of the First Amended Complaint.

Dated: May 15, 2006                      /s/_____
                                         Steven Riess
                                         Attorney for Plaintiff Morris

Dated: May 12, 2006                      /s/_____
                                         James W. Poindexter
                                         Attorney for defendants ChoicePoint
                                         and EquiSearch

It is so ordered that plaintiff may file the First Amended Complaint.

Dated:___ June 8, 2006 _____        _____
                                         Judge

IT IS SO ORDERED
Judge Samuel Conti

Stipulation for Filing of First Amended Complaint & Order
- 1 -

1  Steven Riess, SBN 100131
   Law Offices of Steven Riess
2  456 Montgomery Street, 20th Floor
   San Francisco, CA 94104
3  (415) 989-1970 Telephone
   (415) 398-2820 FAX
4  stevenriess@stevenriess.com

5  Attorney for Plaintiffs

6

7

8                    UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10

11  Julie Ann Morris and The Morris Family QTIP   Case No. C 06-01224 SC
    Trust, by and through its trustees, Julie Ann Morris
12  and Teresa Morris Franc,                       FIRST AMENDED COMPLAINT FOR:
                                                    1. Violation of Unclaimed Property Law
13           Plaintiffs,                               (CCP § 1500 *et seq.*)
                                                    2. Rescission for Illegality (CC § 1670.5)
14  vs.                                             3. Rescission for Mutual Mistake
                                                    4. Rescission for Unilateral Mistake
15  ChoicePoint Services, Inc., EquiSearch Services, 5. Conversion
    Inc., Lee Rothman, and Mellon Investor Services, 6. Elder Financial Abuse (W & I §
16  LLC,                                               15610.30
                                                    7. Fraud
17           Defendants.                            8. Negligent Misrepresentation
                                                    9. Violation of Unlawful Competition Law
18                                                     (B & P § 17200 *et seq.*)

19                                                  DEMAND FOR JURY TRIAL

20                                                  COMPLAINT FILED: January 18, 2006

21                             **JURISDICTION**

22      1.      Plaintiff Julie Ann Morris ("Morris") is, and at all times mentioned herein, was a

23  citizen of California. Plaintiff The Morris Family QTIP Trust ("QTIP Trust") is a testamentary trust

24  created, existing, and administered under the laws of California. Defendant ChoicePoint Services,

25  Inc. ("ChoicePoint") is a Georgia corporation with its principle place of business in Alpharetta,

26  Georgia. Defendant EquiSearch Services, Inc. ("EquiSearch") is a Georgia corporation with its

27  principle place of business in White Plains, New York. Defendant Lee Rothman ("Rothman") is a

28  natural person; plaintiffs believe that Rothman is a citizen of the New York. Defendant Mellon

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

Investor Services, LLC ("Mellon") is a limited liability corporation with its principle place of business in Ridgefield Park, New Jersey. The jurisdiction of this court over the subject matter of this action is based on 28 USC § 1332. The amount in controversy exceeds, $75,000, exclusive of interest and costs.

## PRELIMINARY ALLEGATIONS

2.      At all times mentioned, Morris was a natural person over the age of 18 years. The QTIP Trust is a testamentary trust established under the laws of California. The co-trustees of the QTIP Trust are Morris and Teresa Morris Franc ("Franc"), who bring this action in their representative capacities as co-trustees. Morris also brings this action on her own behalf as an individual and as a beneficiary of the QTIP Trust.

3.      The true names and capacities of other defendants are unknown, and plaintiffs will amend this complaint to show their true names and capacities when this information is ascertained. Each such other defendant is in some manner responsible for the damages alleged pursuant to each cause of action asserted, either through its own conduct, or vicariously through the conduct of others. All further references in this complaint to any of the named defendants, or to defendants generally, shall include such other defendants.

4.      At all times mentioned, each defendant was an agent, servant, employee, partner, and joint venturer of each and every other defendant and was acting within the course and scope of this relationship. The conduct of each defendant was authorized and ratified by each and every other defendant.

5.      This court is the proper court in which to bring this action because plaintiffs sustained injury within its jurisdiction and the events giving rise to this action occurred here.

## GENERAL ALLEGATIONS

6.      Paragraphs 1 through 5 are incorporated by reference.

7.      Plaintiff Morris was born on June 20, 1935 and was at least 67 years old at the time of the events alleged in this complaint. Morris is a widow and lives alone in Mill Valley, California; Morris's husband, James M. Morris, M.D. ("Dr. Morris"), died on March 7, 1993. For many years prior to his death, Dr. Morris conducted a medical practice located at 533 Parnassus Avenue/103U,

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

in San Francisco. Morris and Dr. Morris resided together at the family home at 255 Hillside Avenue, in Mill Valley, and Morris continues to reside there. Morris and Dr. Morris raised four children. During their 35 years of marriage, Dr. Morris attended to the family's finances; Morris did not work outside the home and did not participate in managing or monitoring the family's assets. In or about 1985, Dr. Morris purchased 2,600 shares of Northern Empire Bancshares (hereafter Northern Empire Bancshares shall be referred to as "NEB" and the shares of stock as "the Stock"). The Stock was purchased with community property assets of Morris and Dr. Morris and was owned as community property. Morris believes and thereon alleges that the shareholder records of NEB showed the registered owner of the stock as Dr. Morris. Morris believes and thereon alleges that the shareholder records of NEB listed Dr. Morris's medical office as the address of the registered shareholder.

8.      In late 1992, Dr. Morris became gravely ill. On or about January 19, 1993, approximately six weeks before the death of Dr. Morris, Morris and Dr. Morris created and executed The Morris Family Trust, Dated January 19, 1993. Morris and Dr. Morris were designated co-trustees. On January 21, 1993, Morris and Dr. Morris executed an Assignment whereby they transferred ownership of various assets owned by them to The Morris Family Trust. Included among these assets was ownership of the Stock. On January 22, 1993, Morris and Dr. Morris executed a First Amendment to the Morris Family Trust and a Second Amendment to the Morris Family Trust. These amendments provided for the creation of the QTIP Trust upon the death of either spouse. On March 7, 1993, Dr. Morris died. A probate was commenced in which Morris was named personal representative.

9.      As a result of the death of Dr. Morris, the QTIP Trust came into existence and The Morris Family Trust terminated. Morris and Franc were, and continue to be, co-trustees of the QTIP Trust. Thereafter, various assets were allocated to the QTIP Trust, including the Stock. Thereafter, the accountants employed by the trusts prepared various accounting and tax documents reflecting these events.

10.      Plaintiffs believe and thereon allege that NEB continued to maintain the name and business address of Dr. Morris in its shareholders' records.

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

11.     Mellon is the transfer agent of, and acts on behalf of, NEB. Plaintiffs believe and thereupon allege that Mellon, on behalf of NEB, became aware that mail sent to the business address of Dr. Morris was returned by the postal service and thereafter contacted ChoicePoint and EquiSearch and informed them it could not locate Dr. Morris, notwithstanding easily accessible public records showing Morris as the surviving spouse of Dr. Morris who continued to reside at the family home in Mill Valley. Plaintiffs believe and thereon allege that Mellon provided ChoicePoint and EquiSearch with the last known name and address of Dr. Morris as well as the number of shares of the Stock owned.

12.     Rothman was an employee of ChoicePoint and EquiSearch. By letter dated October 22, 2002, Morris received an unsolicited letter from Rothman, on behalf of ChoicePoint and EquiSearch, addressed to Morris at the Morris family home in Mill Valley. This letter stated:

> "Publicly held corporations, mutual funds and financial institutions have assigned us to locate the rightful owners of dormant assets. These clients turn to us after their own best efforts have been unsuccessful. Rather than classify the assets as 'abandoned property', they prefer to have ChoicePoint, as professional locators, find the rightful owners."

This letter further states:

> "Our research has shown you represent the estate of the above named decedent [Dr. Morris]. We wish to inform you of a dormant asset accruing to that estate. This asset has had no activity for some time, and therefore we assume that the estate is unaware of its existence and value."

13.     Sometime thereafter, Rothman telephoned Morris and spoke with her. Rothman represented to plaintiff that he had discovered abandoned property which Morris was entitled to recover on behalf of the estate of Dr. Morris. Rothman further told Morris that this property would be lost if Morris did nothing. Morris inquired about the nature and amount of the property but Rothman refused to provide her with any specific information. Since Morris had not actively participated in the management of the couple's property, Rothman easily led her to believe that Dr. Morris had somehow acquired rights to this lost property which Rothman refused to identify. Rothman told Morris that to recover the property, Morris must sign a fee agreement which paid ChoicePoint 35 percent of the property to be recovered. Morris was uncertain what to do and told Rothman that she would let him know.

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

14.     By letter of December 6, 2002, Rothman again contacted Morris. This letter states:

> "It was a pleasure speaking with you regarding the dormant asset to which the above-captioned estate is entitled."

Enclosed with this letter was ChoicePoint's fee agreement providing that it would be paid 35 percent of the asset to be recovered. Morris did not respond to this letter.

15.     During the summer of 2003, Rothman continued to telephone Morris. By letter dated August 7, 2003, Rothman again encouraged Morris to sign and return ChoicePoint's fee agreement so that "the recovery process could begin" for the "dormant asset to which you are entitled." Thereafter, Morris had a number of telephone conversations with Rothman, all initiated by Rothman, in which she attempted to determine whether ChoicePoint conducted a legitimate business and whether ChoicePoint in fact knew of an abandoned asset to which she was entitled. Rothman continued to refuse to provide Morris with any specific information about the asset and continued to represent that the abandoned asset would be lost if Morris did nothing. During these telephone conversations, Morris repeatedly requested additional information, particularly with regard to the nature and value of the asset. In or about September, 2003, and in response to Morris's failure to sign and return the fee agreement, Rothman told Morris that the abandoned asset was worth "around $17,000." Based on Rothman's representations, and his repeated efforts to persuade her to sign the fee agreement, on September 20, 2003 Morris finally agreed and signed and returned ChoicePoint's fee agreement. The written agreement prepared by ChoicePoint recites that it is an agreement between ChoicePoint and the Estate of Dr. Morris. The agreement is signed by Rothman on behalf of ChoicePoint; Morris signed the agreement above the line designated "Julie Ann Morris" but without any indication that she was acting in any representative capacity.

16.     By letter dated October 8, 2003, Rothman wrote to Morris and told her:

> "I would like to take this opportunity to thank you for signing our Agreement and to explain how our Asset Recovery Program works.

> "ChoicePoint will do all necessary follow up and pay **ALL FEES** required to complete the recovery of the shares of stock and all holdings in NORTHERN EMPIRE BANCSHARES."

This letter disclosed to Morris for the first time the identity of the asset. At that time, Morris was unaware that the Stock was already owned by the QTIP Trust, of which she is a beneficiary.

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

Thereafter, ChoicePoint prepared various additional documents which it presented to Morris for signature for the purpose of accomplishing the sale of the Stock.

17. The Stock was neither abandoned nor dormant and had from time-to-time, declared dividends and had split. Moreover, in September, 2003, the Stock was worth approximately $340,000, and not "around $17,000" as represented by Rothman.

18. By letter dated March 15, 2004, Rothman informed Morris that all of the Stock had been sold and that the gross proceeds of sale were $339,286.10. From this amount, ChoicePoint and EquiSearch paid themselves a fee of $118,240.68 and paid a brokerage fee of $1,513.24. The balance of $219,589.83 was then delivered to Morris.

19. In early 2005, the accountant of the QTIP Trust became aware of an IRS 1099 from EquiSearch documenting the sale of the Stock. The accountant contacted Morris to learn the circumstances of the sale and the involvement of defendants. Because the Stock was already a part of Morris's estate plan and was held with a low tax basis, the sale generated a capital gain of $197,107.18. The accountant determined that it was necessary to recognize a capital gain of $197,107.18 on the sale, which resulted in the elimination of a tax loss carry-forward in the amount of $47,897.04.

**FIRST CAUSE OF ACTION AGAINST CHOICEPOINT, EQUISEARCH, AND MELLON**
**(Violation of Unclaimed Property Law)**

20. Paragraphs 1 through 19 are incorporated by reference.

21. The Stock, dividends declared thereon, and stock splits were property subject to reporting and delivery to the Controller of the State of California pursuant to CCP § 1500 *et seq.* ("Unclaimed Property Law"). Plaintiffs believe and thereon allege that all conditions necessary for the delivery of this property were satisfied and that therefore the Stock and related property escheated to the Controller by operation of law and should have been delivered to the Controller. Mellon, ChoicePoint, and EquiSearch failed to properly report and deliver this property to the Controller in violation of the Unclaimed Property Law, thus depriving plaintiffs of the protection of the Unclaimed Property Law.

22. The agreement of September 20, 2003, is illegal in that it requires plaintiffs to pay

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

1  ChoicePoint and EquiSearch a fee in excess of the ten percent limitation provided by CCP § 1582.

2   23.   As a direct result of defendants' failure to comply with the requirements of the

3  Unclaimed Property Law and the illegality of the agreement, plaintiffs have sustained damages in

4  an amount of not less than $167,651. Plaintiffs seek rescission of the agreement based on the

5  illegality of the contract, or alternately for damages as alleged herein.

6  **SECOND CAUSE OF ACTION AGAINST CHOICEPOINT AND EQUISEARCH**
   **(Rescission for Illegality Pursuant to CC § 1670.5)**

7
8   24.   Paragraphs 1 through 23 are incorporated by reference.

9   25.   On September 20, 2003, the written agreement whereby ChoicePoint and EquiSearch

10 agreed to recover an unidentified asset belonging to the Estate of Dr. Morris and would be

11 compensated in the amount of 35 percent of the gross value of the asset recovered was executed.

12  26.   The contract was unlawful under the circumstances at the time it was made because

13 it was procedurally and substantively unconscionable in violation of Civil Code section 1670.5.

14  27.   As a direct result of the unlawful contract, plaintiffs were damaged in that fees of

15 $119,754 were paid and a tax loss carry-forward of $47,897.04 was lost.

16  28.   Plaintiffs seek rescission of the agreement based on the illegality of the contract.

17 Plaintiffs have no other adequate remedy at law and will suffer irreparable harm if this agreement is

18 not rescinded and if the fees paid are not returned.

19 **THIRD CAUSE OF ACTION AGAINST CHOICEPOINT AND EQUISEARCH**
   **(Rescission for Mutual Mistake)**

20  29.   Paragraphs 1 through 28 are incorporated by reference.

21  30.   On September 20, 2003, the written agreement whereby ChoicePoint and EquiSearch

22 agreed to recover an unidentified asset belonging to the Estate of Dr. Morris and would be

23 compensated in the amount of 35 percent of the gross value of the asset recovered was executed.

24  31.   Consent to the agreement of September 20, 2003 was not real, mutual, or free in that

25 it was obtained solely through the mutual mistakes as herein alleged.

26  32.   The agreement was entered into under material, mutual mistakes of fact in that it was

27 believed that the asset to be recovered belonged to the Estate of Dr. Morris, was abandoned,

28 dormant, or otherwise lost, that the value of this asset was around $17,000, and that any interest of

1  plaintiffs in this property would be lost if action were not taken. However, at the time of this

2  agreement, it was unknown that the asset did not belong to the Estate of Dr. Morris, but rather

3  belonged to the QTIP Trust as alleged herein. In any event, plaintiffs stood to lose nothing if no

4  action were taken; conversely, plaintiffs would not benefit from the sale of the Stock, but rather its

5  sale by ChoicePoint and EquiSearch would cost plaintiffs $167,651, as alleged herein.

6       33.    Plaintiffs, ChoicePoint, and EquiSearch entered the agreement of September 20,

7  2003, because of their mistaken belief that the asset to be recovered belonged to the Estate of Dr.

8  Morris, was abandoned, dormant, or otherwise lost, that the value of this asset was around $17,000,

9  and that any interest of plaintiffs in this property would be lost if action were not taken.

10       34.    As a direct result of the mutual mistake of fact of the parties, plaintiffs were

11  damaged in that fees of $119,754 were paid and a tax loss carry-forward of $47,897.04 was lost.

12       35.    The parties would not have given apparent consent to the agreement of September

13  20, 2003, except for these mistaken beliefs.

14       36.    Plaintiffs seek rescission of the agreement as a result of these mutual mistakes of

15  fact. Plaintiffs have no other adequate remedy at law and will suffer irreparable harm if this

16  agreement is not rescinded and if the fees paid are not returned.

17      **FOURTH CAUSE OF ACTION AGAINST CHOICEPOINT AND EQUISEARCH**
    **(Rescission for Unilateral Mistake)**

18

19       37.    Paragraphs 1 through 36 are incorporated by reference.

20       38.    On September 20, 2003, the written agreement whereby ChoicePoint and EquiSearch

21  agreed to recover an unidentified asset belonging to the Estate of Dr. Morris and would be

22  compensated in the amount of 35 percent of the gross value of the asset recovered was executed.

23       39.    Consent to the agreement of September 20, 2003 was not real or free in that it was

24  obtained solely through the mistakes as herein alleged.

25       40.    The agreement was entered into under material mistakes of fact in that it was

26  believed by plaintiffs that the asset to be recovered belonged to the Estate of Dr. Morris, was

27  abandoned, dormant, or otherwise lost, that the value of this asset was around $17,000, and that any

28  interest of plaintiffs in this property would be lost if action were not taken. However, at the time of

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

this agreement, it was unknown that the asset did not belong to the Estate of Dr. Morris, was not abandoned, dormant, or otherwise lost, that the value of this asset was not around $17,000, and that any interest of plaintiffs in this property would not be lost if action were not taken. In any event, plaintiffs stood to lose nothing if no action were taken; conversely, plaintiffs would not benefit from the sale of the Stock, but rather its sale by ChoicePoint and EquiSearch would cost plaintiffs $167,651, as alleged herein.

41.     ChoicePoint and EquiSearch were, or should have been aware, that the asset was not abandoned, dormant, or lost. Moreover, ChoicePoint and EquiSearch were, or should have been aware, that the value of the asset was not around $17,000 and that the Stock would not be lost if action were not taken. ChoicePoint and EquiSearch used plaintiffs' mistake to unfairly take advantage of plaintiffs by obtaining fees of $119,754 without plaintiffs receiving any value therefore.

42.     Plaintiffs were induced to enter the agreement of September 20, 2003, because of the mistaken belief that the asset to be recovered belonged to the Estate of Dr. Morris, was abandoned, dormant, or otherwise lost, that the value of this asset was around $17,000, and that any interest of plaintiffs in this property would be lost if action were not taken.

43.     As a direct result of these material mistakes of fact, plaintiffs were damaged in that fees of $119,754 were paid and a tax loss carry-forward of $47,897.04 was lost.

44.     Plaintiffs would not have given apparent consent to the agreement of September 20, 2003, except for this mistaken belief.

45.     Plaintiffs seek rescission of the agreement as a result of these material mistakes of fact. Plaintiffs have no other adequate remedy at law and will suffer irreparable harm if this agreement is not rescinded and if the fees paid are not returned.

**FIFTH CAUSE OF ACTION AGAINST CHOICEPOINT, EQUISEARCH, AND ROTHMAN**
**(Conversion)**

46.     Paragraphs 1 through 45 are incorporated by reference.

47.     From 1985 until January 21, 1993, the Stock was owned by Morris and Dr. Morris as community property. On January 21, 1993, Morris and Dr. Morris transferred the Stock to The

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

1  Morris Family Trust. Effective March 7, 1993, the Stock was allocated to the QTIP Trust. From

2  March 7, 1993 until the sale of the Stock by ChoicePoint, the Stock was owned by the QTIP Trust,

3  which therefore had the right to possess it.

4        48.    The QTIP Trust, owner of the Stock, never entered into any agreement with

5  ChoicePoint. By wrongfully obtaining the signatures of Morris on various documents, defendants

6  were able to convert the Stock from the QTIP Trust and deprived it of its rightful ownership and

7  possession of the Stock.

8        49.    As a direct and proximate cause of defendants' wrongful conduct, the QTIP Trust

9  has been deprived of its property, namely the Stock, has been deprived of $119,753.92, and has

10  incurred an adverse tax consequence in the amount of $47,897.04. Had defendants not converted

11  this property, the QTIP Trust would not have sold the Stock and would not have incurred these

12  losses.

13        50.    Defendants' wrongful conduct constituted oppression, fraud, and malice and

14  plaintiffs are entitled to recover damages for the sake of example and by way of punishing

15  defendants pursuant to Civil Code section 3294.

16        **SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
                 **(Elder Financial Abuse)**
17

18        51.    Paragraphs 1 through 50 are incorporated by reference.

19        52.    Defendants made various misrepresentations to plaintiffs, including but not limited

20  to, that the property was abandoned, dormant, would be lost if plaintiffs did not contract with

21  defendants, and that the asset was worth "around $17,000." As a direct result of these

22  misrepresentations, plaintiffs executed defendants' agreement by which defendants' paid to

23  themselves and others $119,753.92 and caused plaintiffs to incur an adverse tax consequence in the

24  amount of $47,897.04. In doing so, defendants took, secreted, appropriated, and retained the

25  property of plaintiffs, an elder, to a wrongful use within the meaning of Welfare & Institutions Code

26  section 15610.30. Defendants engaged in such conduct either directly, or assisted others in such

27  conduct.

28        53.    In engaging in such conduct, defendants intended to defraud plaintiffs within the

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

Stipulation for Filing of First Amended Complaint & Order

1    meaning of Welfare & Institutions Code section 15610.30.

2        54.    As a direct and proximate cause of defendants' wrongful conduct, plaintiffs have

3    been deprived of property, namely the Stock, have been deprived of $119,753.92, and have incurred

4    an adverse tax consequence in the amount of $47,897.04. Had defendants not engaged in this

5    wrongful conduct, the Stock would not have been sold and these losses would not have been

6    incurred.

7        55.    In addition to all other remedies provided by law, plaintiffs are entitled to recover

8    reasonable attorney fees and costs for financial abuse pursuant to Welfare & Institutions Code

9    section 15657.5.

10       56.    Defendants' conduct constituted oppression, fraud, and malice in the commission of

11   the financial abuse, and plaintiffs are entitled to recover damages for the sake of example and by

12   way of punishing defendants for financial abuse pursuant to Civil Code section 3294.

**SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Fraud)**

15       57.    Paragraphs 1 through 56 are incorporated by reference.

16       58.    The representations which defendants made to plaintiffs regarding the nature and

17   value of the asset were false and misleading.

18       59.    The false and misleading statements of defendants were material to plaintiffs'

19   decision to sign the agreement whereby defendants sold the Stock and paid themselves a fee of

20   $118,240.68 and paid a brokerage fee of $1,513.24. Plaintiffs justifiably relied on these

21   misrepresentations which resulted in the sale of the Stock.

22       60.    Defendants knew that these statements were false and misleading and that plaintiffs

23   would rely upon them to their detriment, and defendants thereby intended to defraud plaintiffs.

24       61.    As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered

25   damages as alleged herein.

26       62.    Defendants' conduct constituted oppression, fraud, and malice, and plaintiffs are

27   entitled to recover damages for the sake of example and by way of punishing defendants pursuant to

28   Civil Code section 3294.

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

**EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Negligent Misrepresentation)**

63.     Paragraphs 1 through 62 are incorporated by reference.

64.     Defendants owed plaintiffs a duty to provide accurate information and not to provide false or misleading information to plaintiffs. Moreover, defendants owed plaintiffs a duty not to harm plaintiffs by selling all of the Stock and thereby causing plaintiffs to incur an adverse tax consequence in the amount of $47,897.04.

65.     Defendants acted negligently and unreasonably and breached their duty of care by selling the Stock, by paying themselves a fee of $118,240.68, by paying a brokerage fee of $1,513.24, and by causing plaintiffs to incur an adverse tax consequence in the amount of $47,897.04.

66.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs suffered damages as further alleged herein.

**NINTH CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Violation of Unfair Competition Law – B & P § 17200 *et seq.*)**

67.     Paragraphs 1 through 66 are incorporated by reference.

68.     The conduct alleged herein of defendants, and each of them, constitute unfair, unlawful, or fraudulent acts or practices within the meaning of Business & Professions Code sections 17200 *et seq.*

69.     Specifically, defendants, and each of them, engaged in unfair, unlawful, or fraudulent acts or practices by: (1) making statements likely to deceive plaintiffs that defendants were aware of an asset in which the Estate of Dr. Morris had an interest; (2) making statements likely to deceive plaintiffs that defendants were aware of an asset which was abandoned, dormant, or lost; (3) making statements likely to deceive plaintiffs that the asset would be lost if plaintiffs failed to engage defendants; (4) making statements likely to deceive plaintiffs that the asset was worth around $17,000; (5) failing to comply with the requirements of Code of Civil Procedure sections 1500 *et seq.*; (6) failing to comply with the requirements of Securities and Exchange Commission Rules 17Ad-24; (7) participating in an enterprise which accomplished the defrauding

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

of plaintiffs; (8) participating in an enterprise which resulted in the elder financial abuse of Morris in violation of Welfare & Institution Code sections 15610.30 and 15657.5; (9) making an illegal contract in violation of Code of Civil Procedure sections 1500 *et seq.* (10) making an unconscionable contract in violation of Civil Code section 1670.5; and (11) participating in an enterprise which accomplished the conversion of plaintiffs' property in violation of  Civil Code section 3336.

70.    As a direct result of defendants unfair, unlawful, or fraudulent acts or practices, plaintiffs sustained injuries in that plaintiffs lost money and property, were deprived of $119,753.92 and have incurred an adverse tax consequence in the amount of $47,897.04.

71.    As a further direct result of defendants unfair, unlawful, or fraudulent acts or practices, plaintiffs are entitled to recover the amount of $167,651.

72.    Plaintiffs seek injunctive relief against further acts and practices by defendants constituting unfair competition in violation of Business & Professions Code section 17200.

### DEMAND FOR JURY TRIAL

73.    Plaintiffs hereby demand trial by jury in this action.

WHEREFORE, plaintiffs pray for damages against defendants, and each of them, as follows:

a.    For compensatory damages according to proof;

b.    For punitive damages according to proof;

c.    For rescission of the agreement and restitution of all money received by or on behalf of defendants;

d.    For an equitable remedy requiring defendants to pay plaintiffs an amount equal to their damages;

e.    For three times actual damages;

f.    For preliminary and permanent injunctive relief prohibiting defendants from engaging in further acts of unfair competition;

g.    For attorney's fees, court costs, and litigation expenses according to proof; and

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

1    h.    For such further relief as the court may deem just.

2  Dated: _____          _____
                                          Steven Riess
3                                         Attorney for plaintiffs

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices of Steven Riess
456 Montgomery Street, 20th Floor
San Francisco, CA 94104

Stipulation for Filing of First Amended Complaint & Order

- 15 -