JAMES W. POINDEXTER (SBN 95966)
POINDEXTER & DOUTRÉ, INC.
251 Post Street, Suite 605
San Francisco, CA 94108
Telephone: 415/398-5811 – Fax: 415/398-5808

Attorneys for Defendants
ChoicePoint Services Inc.,
EquiSearch Services Inc., Lee
Rothman, Mellon Investor
Services LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE ANN MORRIS and THE MORRIS FAMILY QTIP TRUST, by and through its trustees, JULIE ANN MORRIS and TERESA MORRIS FRANC,<br><br>Plaintiffs,<br><br>vs.<br><br>CHOICEPOINT SERVICES, INC., EQUISEARCH SERVICES, INC., LEE ROTHMAN, and MELLON INVESTOR SERVICES, LLC,<br><br>Defendants. | Case No. C 06-01224 SC<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CERTAIN CLAIMS FROM FIRST AMENDED COMPLAINT**<br><br>Date: August 25, 2006<br>Time: 10:00 a.m.<br>Courtroom: 1 (17th Floor) |

Only a "short and plain statement of the claim" is required under Federal Rule of Civil Procedure 8(a). This rule, however, is not an excuse for defective pleading. A complaint must give "fair notice" of the claim and the "grounds upon which it rests". <u>Conley v. Gibson</u> (1957) 355 U.S. 41, 47-48. As to the specified claims, plaintiffs' amended complaint fails to meet this threshold.

1

1.  Plaintiffs Have Not Alleged a Claim under the Unclaimed Property Law.

Plaintiffs never address the issue posed by the motion. Code of Civil Procedure §1516(b) of the Unclaimed Property Law ("UPL") only applies if the required amount of time (at least three (3) years) has passed without communication with the shareholder. Plaintiffs fail to allege that the three years or, for that matter, any amount of time passed. Plaintiffs' indifference to this issue is telling. They argue: "Thus, how much time elapsed after mail to Dr. Morris was returned by the postal service is simply a question of fact – be it nine years, three years, or some other period." (Plaintiffs' Opposition, p. 3:25-27) Although plaintiffs seem indifferent to this issue, the statute specifies that at least three years have passed in order to state a claim.

Federal Rule of Civil Procedure 11 requires that plaintiffs have evidentiary support for their allegations. To say that "some" period of time passed, as plaintiffs do here, does not satisfy this standard. It is evident from plaintiffs' own allegations that far less than the requisite three years had lapsed (i.e., plaintiffs allege that Mellon contacted ChoicePoint after mail was returned that had been sent to the shareholder's address).

Plaintiffs other arguments do little but muddy the water. They suggest, for example, that defendants were lax in locating Dr. Morris' address. Such arguments do not remedy the legal deficiency of their UPL claim as pled. As noted in Securities and Exchange Commission Rule 17Ad-17, there was no duty to search for a deceased shareholder's address. Obviously, much of the problem arose (not from defendants' conduct) but from plaintiffs' failure to notify the transfer agent (a) that the QTIP Trust rather than Dr. Morris owned the Stock, and (b) that Dr. Morris had died. Either way, plaintiffs have not alleged an actionable claim under the UPL.

Plaintiffs also refer to Fong v. Westley (2004) 117 Cal.App.4th 841 and Code of Civil Procedure §1576 which (they argue) provides for "substantial civil penalties." This argument

too goes far afield. The "civil penalties" under Section 1576 "may only be imposed *after* the Controller has given notice by certified mail of the violation and the violator has failed to respond." See, Code of Civil Procedure §1576(c); State ex rel. Bowen v. Bank of America Corp. (2005) 126 Cal.App.4th 225, 235. Plaintiffs have not alleged (nor can they) that the Controller provided such notification to defendants; civil penalties under Section 1576 are simply not recoverable in this action. Generally, only the Controller may assert claims under the UPL or request imposition of such penalties. As stated in State ex rel. Bowen v. Bank of America Corp. , "[t]he Controller is responsible for enforcing the UPL and may investigate suspected violations." Id. at 235. If anything, these authorities cast doubt on whether the UPL creates a private right of action. They certainly do not excuse plaintiffs' failure to allege the requisite passage of time. The first cause of action is properly dismissed.

2. Plaintiffs Have not Alleged a Claim for Financial Elder Abuse.

Plaintiffs offer no legal authority for the proposition that the Stock was "property of an elder". According to their allegations, the Stock belonged to the QTIP Trust (Qualified Terminable Interest Property Trust). Mrs. Morris' participation as one of the co-trustees or trust beneficiaries does not convert a trust asset into personal property. The claim accordingly fails.

Plaintiffs urge that defendants' argument "confuses standing to sue on behalf of a trust with the right of an elder to recover damages for elder financial abuse…" No such confusion exists. The issue is one of ownership. Plaintiffs concede that the Stock belonged to the QTIP trust which was established upon Dr Morris' death, and not to Mrs. Morris (See, Amended Complaint 8, 9, 47). By their own admission, this was a trust asset and not Mrs. Morris' personal property. According to Welfare & Institutions Code §15610.30, to be actionable, the claim must involve the "property of an elder".

Unlike the original complaint (which did allege that Mrs. Morris owned the Stock), the Amended Complaint alleges that the QTIP Trust owned the Stock. Plaintiffs cannot jumble together these allegations in hopes of preserving their elder abuse claim

On the horns of this dilemma, plaintiffs attempt to navigate around the issue by arguing that trust assets should be deemed "property of an elder" whenever a trustee or beneficiary is an "elder". They offer no authority for this viewpoint. This analysis goes nowhere. What if there are multiple beneficiaries and only one of them is an elder? What if there are multiple co-trustees and only one is an elder? Plaintiffs opine that, if an elder places property in trust with a non-elder trustee, the trust assets "should be characterized as property of an 'elder'". [1] Conversely, they argue that, if the trust beneficiary is a minor, and the trustee is an elder, the assets are not "property of an elder". The only way to avoid this quagmire is to follow the statute. "Property of an elder" means just that, property owed by an individual, and not property held by a trust, corporation, limited liability company or other such entity. For purposes of this case, the QTIP Trust's property is not "property of an elder."

Plaintiffs also suggest that "for purposes of elder financial abuse", the trustee or conservator of such property "is merely a nominal owner of the property". That is not the law. According Saks v. Damon Raike & Co. (1992) 7 Cal.App.4th 419, 427-428, the trustees (rather than the beneficiaries) have legal title to trust assets. Trust beneficiaries do not have standing to assert a claim. The Stock in this instance was plainly not "property of an elder".

The sixth cause of action for financial elder abuse fails to state a claim for relief.

---

[1] Nor is this a situation where the elder is both the trustee and beneficiary of a revocable living trust. According to plaintiffs' own allegations, the subject trust was an irrevocable QTIP trust created upon Dr. Morris' death. Under a QTIP trust, Mrs. Morris as the surviving spouse was an income beneficiary, not the remainder beneficiary. There is no allegation at all that Mrs. Morris' beneficial interest was affected one way or the other.

### 3. Plaintiffs Have Not Alleged Fraud or Negligent Misrepresentation by Mellon.

Far from pleading fraud with "particularity", plaintiffs fail to allege even a modicum of facts to support their claim against Mellon. They fall back instead to "secondary liability" allegations in paragraph 4 of the Amended Complaint, which state that each defendant "was an agent, servant, employee, partner…" of the other defendants. The California Supreme Court has referred to such "secondary liability" allegations as "egregious examples of generic boilerplate". Moore v. Regents of Univ. of California (1990) 51 Cal.3d 120, 133-134, fn. 12 (remanding case and criticizing use of such allegations in action alleging conversion).

The requirement of specificity in pleading fraud is even more exacting where the defendant is a corporation. "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mutual Auto. Insurance Co. (1991) 2 Cal.App.4th 153, 157. In Tarmann, the court sustained a demurrer to the plaintiff's complaint for fraud and negligent misrepresentation. Plaintiff had alleged that "authorized agents of State Farm" had represented that State Farm would pay for repairs to plaintiff's car. The Court of Appeal affirmed dismissal of the action.

As in Tarmann, plaintiffs have not properly alleged (nor can they allege) that Mr. Rothman was Mellon's agent, or that he had "authority to speak" on Mellon's behalf. Plaintiffs seek refuge in generic "secondary liability" allegations, even though such allegations contradict

their assertion that Mr. Rothman was acting as an employee of "ChoicePoint and EquiSearch". If plaintiffs have any basis for alleging that Mr. Rothman was Mellon's agent and had power to speak on Mellon's behalf, they should be required to say so. It should be apparent that no such facts exist. The fraud and negligent misrepresentation claims are properly dismissed as to Mellon.

4. <u>Plaintiffs Fail to Allege an Unfair Competition Claim against Mellon</u>.

Plaintiffs' allegations against Mellon for "unfair competition" rely on Mellon's alleged violation of (a) the Unclaimed Property Law and (b) SEC rules on locating lost shareholders. Since plaintiffs have not properly alleged a violation of the UPL (see discussion above) that part of their argument is of little help. Nor have they alleged a violation of SEC rules regarding lost shareholders.

The duty to locate lost shareholders under SEC Rule 17Ad-17 does not apply if "such securityholder is deceased". Plaintiffs concede that Dr. Morris was the shareholder on the stock certificates and that he was deceased. They attempt to avoid the legal consequences of these allegations by urging that "While this duty [to ascertain a shareholder's correct address] may not have existed at the time of Dr. Morris's death in 1993, it certainly existed between 1997 and 2002." (Plaintiffs' Opposition, p.7:13-14) The argument ignores the express exception under the Rule where the shareholder is deceased. Plaintiffs have not alleged a violation of the SEC rules. The ninth cause of action is properly dismissed as to Mellon.

5. <u>Mrs. Morris, as an Individual, Does not Have Standing</u>.

Plaintiffs argue that Mrs. Morris should have a right to sue in her individual capacity because she is a beneficiary of the QTIP Trust. That argument fails for two reasons. First, as stated in <u>Saks v. Damon Raike & Co</u>. (1992) 7 Cal.App.4th 419, 427, only the trustee, and not the beneficiaries, has standing to sue with regard to trust assets. Plaintiffs allege throughout their

Amended Complaint that the QTIP Trust owned the Stock. Mrs. Morris does not have standing to bring this action in her individual capacity as a beneficiary of the QTIP Trust. Second, even if standing were not a problem, plaintiffs fail to allege any damage to Mrs. Morris' interest as a beneficiary. Indeed, there is no allegation in the Amended Complaint that Mrs. Morris received any income from the Stock or suffered any damage, apart from the alleged damage to the QTIP Trust's property. Whatever claims she may have must be asserted in her capacity as a co-trustee.

Respectfully submitted,

**POINDEXTER & DOUTRÉ, INC.**

DATED: August 11, 2006

By:_____
James W. Poindexter
Attorneys for Defendants
ChoicePoint Services Inc., EquiSearch Services Inc., Lee Rothman, and Mellon Investor Services LLC

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is 251 Post Street, Suite 605, San Francisco, California 94108.

On August 11, 2006, I served the foregoing document(s) described as DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CERTAIN CLAIMS FROM FRIST AMENDED COMPLAINT on the interested party(ies) in this action

[ ] by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list:

[x] by placing the [ ] the original [x] a true copy thereof enclosed in sealed envelopes addressed as follows

STEVEN RIESS, ESQ.
LAW OFFICES OF STEVEN RIESS
456 MONTGOMERY STREET, 20TH FLOOR
SAN FRANCISCO, CA 94104

[ ] FIRST CLASS MAIL

[ ] I deposited such envelope in the mail at San Francisco, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U. S. postal service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

[X] (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee(s): Executed on August 11, 2006, at San Francisco, California.

[X] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (Federal) I declare that I am a member of the bar of this court.

Executed on August 11, 2006, at San Francisco, California.

_____James W. Poindexter_____

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 624 South Grand Avenue, Suite 2420, Los Angeles, California 90017-3325.

On August 11, 2006, I served the foregoing document(s) described as DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CERTAIN CLAIMS FROM FIRST AMENDED COMPLAINT on the interested party(ies) in this action

[X] by Electronic Filing Service. Complying with the court's Electronic Case Filing program (ECF) under General Order 45, I caused such document(s) to be electronically filed. The file transmission was reported as complete and a copy of the "Notice of Electronic Filing" will be maintained with the original document(s) in our office.

[ ] by placing the [ ] the original [x] a true copy thereof enclosed in sealed envelopes addressed as follows:

STEVEN RIESS, ESQ.
LAW OFFICES OF STEVEN RIESS
456 MONTGOMERY STREET, 20TH FLOOR
SAN FRANCISCO, CA 94140

[ ] BY FIRST CLASS MAIL

[ ] I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ] As follows: I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U. S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing stated in this affidavit. Executed on August 11, 2006, at Los Angeles, California.

[ ] (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[x] (Federal) I declare that i am employed in the office of a member of the bar of this court at whose direction the service was made.

ANTONIO G. MARTIN
Type or Print Name

Signature